IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DEANNA SMITH, | : | |
| | : | Case No. 1:16-cv-844 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING IN PART AND |
| AMERICAN MODERN INSURANCE | : | DENYING IN PART DEFENDANTS' |
| GROUP, *et al.*, | : | MOTION FOR SUMMARY |
| | : | JUDGMENT |
| Defendants. | : | |

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 37). Pursuant to Federal Rule of Civil Procedure 72(b), the Court referred the matter to a United States Magistrate Judge who issued a Report and Recommendation (Doc. 51). Both Plaintiff and Defendants filed objections to the Report and Recommendation (Docs. 53, 54) to which the opponents have responded (Docs. 55, 57). For the reasons set forth below, the Court will sustain in part and overrule in part the parties' stated objections. Defendants' Motion for Summary Judgment (Doc. 37) will be granted as to Plaintiff's gender discrimination claim but denied as to Plaintiff's Family and Medical Leave Act ("FMLA") and disability claims.

I.  **BACKGROUND**

The Court will not repeat at length the well-written summary of relevant facts set forth in the Report and Recommendation. The parties agree that Plaintiff Deanna Smith began working for Defendant American Modern Insurance Group (which is wholly owned by Defendant Midland-Guardian Co.) in 1995 and was terminated while she was on FMLA leave in January, 2015. (Doc. 37-1 at PageID 1159–1160, 1169, 1174; Doc. 45-1 at PageID 1619, 1621, 1625.) The parties further agree that Plaintiff suffers from Type II diabetes and Defendants permitted her to take FMLA leave for various medical and surgical issues numerous times without incident

during her 20-year employment there. (Doc. 37-1 at PageID 1162–1163 and Doc. 45-1 at PageID 1620.)

Defendants allege they terminated Plaintiff for poor job performance. Specifically, there is a lengthy written record of performance issues and prior implementation of probation and 60-day Performance Plans dating back to January, 2008. According to Defendants, Plaintiff's work performance deteriorated significantly in 2014, and her supervisor, Jody Blankenship, began the process to terminate Plaintiff's employment in late September, 2014—more than two months before anyone knew Plaintiff would take FMLA leave in December, 2014. (*See* Blankenship email to Kurt Groetsch and Eric Hunziker dated September 29, 2014 attaching list of Smith's alleged performance deficiencies, Doc. 37-14 at PageID 1214–15.)

Plaintiff countered with evidence that her job performance had improved, in fact, in the years prior to her termination. She earned positive performance evaluations in 2012 and 2013 as well as a 2014 "Lit Scorecard" indicating her overall production rate exceeded company goals. ((Doc. 44-1 at PageID 1419–1442; Doc. 33 at PageID 774.) During the first week of December, 2014, Plaintiff began medical leave.

On December 4, 2014, Plaintiff's co-worker and supervisors engaged in the following email exchange:

> Just to bring you both up to date, I just spoke with Dee [Smith]. She had a dr appt this morning at 10:15 and thought she was coming in afterwards. However, the doc has scheduled here [sic] for tests which she hopes to get this week. She has a doc note that she is not to work until Monday and right now she plans to be back Monday. She mentioned logging on and I told her that if she had a doc note that indicated she shouldn't work until Monday then I do not expect her to work at all. She understood.
>
> The medical issue is a tingliness/numbness in her arms, legs and hands – making typing difficult.
>
> We'll see what Monday brings . . . . . . .

(Blankenship email, Doc. 45-3 at PageID 1645.) A co-worker with limited supervisory authority responded:

> This may sound harsh, however . . . . . I hope we are contacting HR to find out what the procedures are to withhold pay in situation [sic] like this. This is exactly why everyone gets 7 sick days, lots of vacation days and several personal days. Some choose to use theirs wisely, others do not. It is not fair to everyone else, if [Plaintiff Smith] gets to enjoy more than she has earned. If we do something this yr, maybe next yr we wont [sic] be in this same boat. Which is exactly where we were last yr I believe. And HR advised we probably should just give her free days. Well that worked well, didn't it. Learned a lot from that lesson, right. I guess I have unlimited days off since [Defendant] AMIG does not enforce rules and will allow me special treatment while my co-workers who do not get the special treatment, also pick up my slack.

(Heaton email to Blankenship, Groetsch and Hunziker dated December 4, 2014, Doc. 45-3 at PageID 1645.) Four days later, Plaintiff's supervisor (Blankenship) emailed Blankenship's managers (Groetsch and Hunziker):

> I just got a text from Dee. . . . [S]he said that the doc told her she would be out for atleast [sic] 30 days. That the diagnosis at this point is that he believes she has nerve damage due to diabetes and that the nerve test (to be conducted on 12/29/14) will confirm or refute . . . . . . . so I think we can safely assume she will be out at least 30 days.
>
> She did say the doc told her she could work a few hours per day from home. I told her I didn't think it was a good idea – but would ask Kurt his opinion. . . . Obviously I've been thinking about what is best from a risk management standpoint and a morale standpoint for my group – I don't want them to have to take on Dee's pending……….but at the same time I can't take risk – I'd like to give it some thought of what is the best thing to do and certainly welcome your input.

(Blankenship email to Groetsch and Hunziker dated December 8, 2014, Doc. 44-3 at PageID 1469–70.) Groetsch responded, in part, "I do share the concerns about morale, the only difference being that we now have another Specialist which is better than prior incidents but still a problem nonetheless." (Groetsch email dated December 8, 2014, Doc. 44-3 at PageID 1469.)

While Plaintiff was on leave, Blankenship obtained access to Plaintiff's email account so she could attend to Plaintiff's files while Plaintiff was on leave. (Blankenship Dep., Doc. 33 at PageID 843–44.) After reviewing Plaintiff's emails, Blankenship became convinced that Plaintiff's performance issues were worse than she originally believed. (*Id.* at PageID 874–75.) On January 30, 2015—before Plaintiff returned from FMLA leave—Defendants terminated her employment.

## II. PROCEDURAL HISTORY

Plaintiff initiated this action alleging Defendants terminated her employment: (1) because of her disability, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12102 ("ADA") and Ohio Revised Code Chapter 4112; (2) because she took legally-protected medical leave, in violation of the FMLA, 29 U.S.C. § 2601, *et seq.*; (3) because of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and Ohio law; and (4) because of her gender, in violation of Ohio Revised Code Chapter 4112.[1]

Defendants filed a Motion for Summary Judgment on all of Plaintiff's claims (Doc. 37), and Plaintiff voluntarily dismissed her state and federal age discrimination claims (Doc. 47). The Court referred the Defendants' Motion to a United States Magistrate Judge who recommended that Defendants' Motion for Summary Judgment be granted as to Plaintiff's disability discrimination claims but denied as to Plaintiff's gender discrimination and FMLA claims. Both the Plaintiff and the Defendants filed objections. The Court reviews the Magistrate

---

[1] The Court will analyze Plaintiff's federal and state discrimination claims together. "Chapter 4112 of the Ohio Revised Code prohibits, among other things, discrimination on the basis of sex and disability. Because that statute's prohibitions mirror those of the ADA and Title VII, the state-law claims rise or fall on the resolution of the federal claims." *Hostetettler v. College of Wooster*, 895 F.3d 844, 848, fn. 1 (6th Cir. 2018).

Judge's Report and Recommendation *de novo* and is free to "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### III. DEFENDANTS' OBJECTIONS TO THE RECOMMENDATION THAT SUMMARY JUDGMENT BE DENIED AS TO PLAINTIFF'S FMLA CLAIM

Defendants object to the recommendation that summary judgment be denied as to Plaintiff's FMLA and gender discrimination claims (Doc. 54). As to the FMLA claim, Defendants contend that the Magistrate Judge:

1. Erred in finding "temporal proximity" sufficient to raise an issue of fact as to causation because Defendants offered evidence that Blankenship wanted to terminate Plaintiff's employment in September, 2014 (more than two months before Plaintiff requested leave);

2. Failed to accord any weight to Defendants' nearly two-decade history of accommodating plaintiff's FMLA leaves without issue;

3. Failed to consider Plaintiff's own concessions that undermine her theory of a causal connection between the FMLA leave and her termination;

4. Erred in concluding that Plaintiff offered enough evidence to create an issue of fact as to whether Defendants' proffered reason for Plaintiff's termination was pretextual; and

5. Failed to apply the "honest belief" defense to shield Defendants from liability.

Having thoroughly reviewed all of Defendants' submissions, Defendants essentially argue that Defendants' evidence sufficiently outweighs Plaintiff's evidence such that no reasonable trier of fact could find for Plaintiff on Plaintiff's FMLA claim.[2]  The Court disagrees.

The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  In making this determination, the Court must view the evidence "in the light most favorable to the nonmoving party."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added); *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (*en banc*).

In viewing the evidence here in the light most favorable to Plaintiff, the Court concludes—as did the Magistrate Judge—that Plaintiff has submitted evidence sufficient to create a genuine issue of material fact on Plaintiff's FMLA claim.  The competing evidence related to Plaintiff's job performance, the Blankenship, Heaton, and Groetsch emails, and the timing of those emails taken together create a genuine issue of material fact that Defendants' stated non-discriminatory reason for terminating Plaintiff is a pretext for FMLA retaliation.  Accordingly, the Court adopts the Magistrate Judge's Report and Recommendation as to Plaintiff's FMLA claim and denies Defendants' Motion for Summary Judgment on that claim.

### IV.     PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

On the other side of the coin, the Plaintiff objects to the recommendation that summary judgment be granted on Plaintiff's state and federal disability discrimination claims (Doc. 53).  Specifically, Plaintiff contends that the Magistrate Judge relied on the *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002) disability standard rather than on the applicable ADA

---

[2] Defendants also object to the Report and Recommendation regarding Plaintiff's gender discrimination claims which the Court will address below.

Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008) ("ADAAA") which legislatively overturned the Court's decision in *Toyota Motor Mfg.* As the Magistrate Judge in this case quoted the ADAAA standard but then relied upon pre-ADAAA case law (including *Toyota Motor Mfg.*) to conclude that Smith failed to establish that she is "disabled" (Doc. 51 at PageID 1721–23), the Court will revisit Smith's disability claims applying the ADAAA and subsequent case law.

The Americans with Disabilities Act "broadly prohibits 'discriminat[ion] against a qualified individual on the basis of disability' as it applies to aspects of employment including hiring, advancement, and firing." *Hostettler v. College of Wooster*, 895 F.3d 844, 848 (6th Cir. 2018) (quoting 42 U.S.C. § 12112(a)). As the Sixth Circuit Court of Appeals recently explained:

> [Y]ears of court decisions narrowly defining who qualifies as an individual with disabilities left the ADA too compromised to achieve its purpose. In response, Congress passed the ADA Amendments Act of 2008 (ADAAA) to invalidate those decisions and to "restore the intent and protections of the Americans with Disabilities Act." Pub. L. No. 110-325, 122 Stat. 3553.

*Id.* at 848–849. In amending the ADA, Congress provided that the term "disability" "should be construed 'in favor of broad coverage . . . , to the maximum extent permitted by the [ADA's] terms." *Barlia v. MWI Veterinary Supply, Inc.*, 721 F. App'x 439, 445 (6th Cir. 2018) (quoting 42 U.S.C. § 12102(4)(A)). "Congress also cautioned that 'the question of whether an individual's impairment is a disability . . . should not demand extensive analysis.'" *Id.* (quoting ADAAA § 2(b)(5)). The ADAAA "defines disability as 'a physical or mental impairment that substantially limits one or more major life activities.'" *Hostettler*, 895 F.3d at 854 (quoting 42 U.S.C. § 12102(1)(A)). "Major life activities include, but are not limited to, sleeping, caring for oneself, speaking, breathing, concentrating, thinking, communicating, and working." *Id.* "To determine whether a disability substantially limits major life activities, the regulations direct

courts to compare the person claiming a disability to 'most people in the general population.'" *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). The regulations further provide that "the individualized assessment of some types of impairments will, in virtually all cases, result in a determination of coverage." 29 C.F.R. § 1630.02(j)(3)(ii). As an example, "it should easily be concluded that . . . diabetes substantially limits endocrine function." 29 C.F.R. § 1630.2(j)(3)(iii).

In the case at bar, the parties admit that Plaintiff suffered from Type II diabetes. In addition, Plaintiff suffered nerve damage related to her diabetes which caused her to take leave in December, 2014, and Defendants were aware of her condition. (Smith Dec., Doc. 45-2 at PageID 1641; Doc. 44-3 at PageID 1469.)

Evaluating Plaintiff's condition against the backdrop of the broad coverage the ADAAA provides and the expansive definitions contained in the promulgated regulations, the Court concludes that Plaintiff's diabetic condition and related nerve damage constitutes a "disability." Accordingly, the Court sustains Plaintiff's objection and reverses the Magistrate Judge's recommendation on this issue.

The remaining elements of the prima facie case for Plaintiff's disability claims are uncontested, and the Defendants have stated a legitimate non-discriminatory reason for Plaintiff's termination, i.e., her alleged poor job performance.[3] "If the defendant meets this burden of production, the plaintiff must introduce evidence showing 'that the proffered reason was not the true reason for the employment decision.'" *Barlia*, 721 F. App'x at 445 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08 (1993)). Based on the evidence discussed above relating to Plaintiff's FMLA claim, the Court concludes that—viewing the evidence in the

---

[3] *See Barlia,* 721 F. App'x at 444–45 (6th Cir. 2018); *Whitfield v. Tenn.*, 639 F.3d 253, 259 (6th Cir. 2011).

light most favorable to the nonmoving party—a reasonable jury could conclude that Defendants' stated reason is a pretext for disability discrimination. Accordingly, the Court sustains Plaintiff's objections to the Magistrate Judge's Report and Recommendation as to Plaintiff's disability claims and denies Defendants' Motion for Summary Judgment on those claims.

## V. PLAINTIFF'S GENDER DISCRIMINATION CLAIM

The Magistrate Judge correctly concluded that Plaintiff established a prima facie case of gender discrimination, and the Defendants offered evidence of Plaintiff's long-standing performance issues as a legitimate non-discriminatory reason for her termination. (Doc. 51 at PageID 1723–24.) The Magistrate Judge then concluded that the pretext analysis applied to Plaintiff's FMLA claims applies equally to Plaintiff's gender discrimination claim. (*Id.* at PageID 1724–25.) It is here that our analyses diverge.

"Beyond showing that the stated reason for her discharge is false, however, [the Plaintiff] must also produce sufficient evidence from which the fact finder could reasonably infer that the asserted unlawful discrimination or retaliation was the real reason." *Bailey v. Oakwood Healthcare, Inc.*, 732 F. App'x 360, 362 (6th Cir. 2018); *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). In the case at bar, the Plaintiff produced evidence contradicting some of the Defendants' evidence that Plaintiff was terminated for poor job performance. (*See* Doc. 51 at PageID 1712–1717.) However, Plaintiff has not identified evidence sufficient to create a genuine issue of fact that gender discrimination was the true reason for her termination.

Unlike the emails discussed above in which Defendants appear to have grown frustrated with Plaintiff's continued FMLA and disability-related absences and associated perceived morale problems, Plaintiff identifies no evidence whatsoever that would support an inference that her termination may have been gender-related. Thus, Plaintiff has failed to establish pretext with

regard to her gender discrimination claim. Accordingly, the Court sustains Defendants' objections to the Magistrate Judge's Report and Recommendation as to Plaintiff's gender discrimination claim and grants Defendants' Motion for Summary Judgment on that claim.

## VI. CONCLUSION

The Court has reviewed the comprehensive findings of the Magistrate Judge and considered *de novo* the filings in this matter as required by Rule 72(b)(3) of the Federal Rules of Civil Procedure. Upon consideration of the foregoing, the Court **SUSTAINS** the Defendants' Objections as to Plaintiff's gender discrimination claim but **OVERRULES** Defendants' Objections as to Plaintiff's FMLA discrimination claim. The Court **SUSTAINS** the Plaintiff's Objections on the disability claims. Accordingly, Defendant's Motion for Summary Judgment (Doc. 37) is hereby **GRANTED** as to Plaintiff's gender discrimination claim but **DENIED** as to Plaintiff's FMLA and disability claims.

**IT IS SO ORDERED**.

Dated: 9/25/18                 ___s/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court